DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Robert Thompson, appeals from the judgment of the Elyria Municipal Court which found him guilty of driving under the influence ("DUI") following his no contest plea. This Court affirms.
 I. {¶ 2} Appellant was arrested on June 20, 2004 and charged with DUI and failure to control-weaving, following a traffic stop initiated by Patrolman Joseph Roth. Appellant pled not guilty to the charges and the matter was set for trial. Prior to trial, Appellant filed a motion to suppress, alleging that the stop of his vehicle was unconstitutional. Specifically, Appellant argued that Patrolman Roth lacked specific, articulable facts that created a reasonable suspicion that Appellant was violating the law.
 {¶ 3} The trial court held a hearing on Appellant's motion to suppress and heard testimony from Patrolman Roth. Patrolman Roth testified as follows.[1] At approximately 1:47 a.m., he observed a vehicle pulled to the side berm of an exit ramp. At that time, Patrolman Roth decided to check on the vehicle to see if the driver was in need of assistance. However, prior to the officer turning around and initiating a stop, the vehicle reentered the roadway, traveling in the opposite direction from which it had come. Patrolman Roth then followed the vehicle for approximately 500 feet. He testified that during this time the vehicle "weaved toward the double yellow line, right toward the solid white edge line, and drifted toward the double yellow center line and jerked to the right." Patrolman Roth then pulled the vehicle to the side of the road.
 {¶ 4} In addition to the officer's testimony, the trial court also received into evidence a videotape taken from the camera of Patrolman Roth's vehicle which recorded his following of the vehicle and the encounter between Appellant and Patrolman Roth. Following the hearing, the trial court ruled that the stop was justified by Patrolman Roth's community caretaking obligations and by his observation of Appellant weaving within his lane. Appellant subsequently pled no contest to both the DUI charge and the weaving charge. Appellant timely appealed from his conviction, raising one assignment of error for our review.
 II. ASSIGNMENT OF ERROR
"The trial court erred to the prejudice of [appellant] by overruling [his] motion to suppress in violation of the fourth
and fourteenth amendments to the united states constitution and article i, section fourteen of the ohio constitution."
 {¶ 5} In his sole assignment of error, Appellant argues that the trial court erred in denying his motion to suppress. Specifically, Appellant asserts that the arresting officer did not have reasonable suspicion to initiate the traffic stop. This Court disagrees.
 {¶ 6} This Court's review of a denial of a motion to suppress involves both questions of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. We accept the factual findings of the trial court if they are supported by some competent and credible evidence. State v. Searls (1997), 118 Ohio App.3d 739, 741. The application of the law to those facts, however, is reviewed de novo. Id.
 {¶ 7} A traffic stop constitutes a seizure under theFourth Amendment. Whren v. United States (1996), 517 U.S. 806, 809-10. An investigative traffic stop does not violate theFourth Amendment where an officer has reasonable suspicion that the individual is engaged in criminal activity. Maumee v. Weisner
(1999), 87 Ohio St.3d 295, 299. To justify an investigative stop, an officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968),392 U.S. 1, 21; Maumee, 87 Ohio St.3d at 299. A court must consider the totality of the circumstances in evaluating the facts and inferences supporting the stop. State v. Freeman (1980),64 Ohio St.2d 291, paragraph one of the syllabus. "[I]f the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop." State v. Shook (June 15, 1994), 9th Dist. No. 93CA005716.
 {¶ 8} North Ridgeville Municipal Code 432.38 provides that "No person shall operate a motor vehicle or motorcycle upon any street or highway in a weaving or zigzag course unless such irregular course is necessary for safe operation or in compliance with law." Patrolman Roth testified, as noted above, that while following Appellant for a short distance, he repeatedly weaved within his own lane. In contrast, Appellant maintains that the videotape of the stop demonstrates that no weaving occurred. Patrolman Roth rebutted that argument, testifying that the tape did not show all that a driver would see while following the vehicle. Our review of the tape supports such a conclusion. In the initial stages of the videotape, Appellant's vehicle is in the distance and the footage is grainy. Accordingly, the trial court had before it competent, credible evidence that Appellant was committing a traffic offense when Patrolman Roth initiated the traffic stop.
 {¶ 9} Appellant relies upon State v. Brite (1997),120 Ohio App.3d 517, overruled by State v. Woodrum (Nov. 20, 2001), 4th Dist. No. 00CA50, for the proposition that the weaving testified to by Patrolman Roth does not give rise to sufficient suspicion to initiate an investigatory stop. Brite, however, "discussed whether crossing the right-hand edge line could give rise to a reasonable suspicion that the driver was driving under the influence, not whether such conduct could provide reasonable suspicion that the driver had committed a traffic violation."State v. Wise (Sept. 12, 2001), 9th Dist. No. 20443. Patrolman Roth's detailed observations of Appellant's weaving within his lane over a short distance provided the reasonable suspicion necessary to justify a stop. Accord State v. Lynn (Dec. 4, 1992), 4th Dist. No. 92CA8.
 {¶ 10} The additional facts surrounding Appellant's stop bolster our conclusion. Before initiating the stop, Patrolman Roth observed Appellant's vehicle parked on the side of the road at approximately 1:47 a.m. "Police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out `community caretaking functions' to enhance public safety." State v. Norman (1999),136 Ohio App.3d 46, 54. Appellant argues that Patrolman Roth could not have been performing his caretaking function because Appellant's vehicle had returned to the road before a stop was initiated. See Statev. Brown (1996), 116 Ohio App.3d 477. In Brown, the officer relied solely upon the fact that the defendant had been parked in front of a closed business to justify a stop. The "appellant's vehicle was not observed in motion; there could thus be no reasonable suspicion of any traffic violation." Id. at 481.
 {¶ 11} In contrast, Patrolman Roth did not initiate the stop of Appellant solely on his observation of Appellant's parked vehicle. The fact that Appellant's car was parked on the side of the road at nearly 2 a.m. served as only one factor in initiating the traffic stop. As noted above, Patrolman Roth independently observed Appellant commit a traffic violation before he initiated the stop. Appellant urges, however, that the videotape of his stop demonstrates that Patrolman Roth relied solely upon his caretaking function in initiating the traffic stop. In the videotape, Patrolman Roth informs Appellant that he would not have been pulled over if he had not been pulled off to the side of the road. Appellant concludes that Patrolman Roth's statement "undermine[s] his eventual claim that [Appellant] drove in a weaving pattern after re-entering the roadway." We decline to draw such a broad conclusion.
 {¶ 12} Patrolman Roth informed Appellant of one of the reasons justifying his stop. Once Appellant was informed of that reason, he became increasingly hostile toward the officer. Accordingly, under the facts presented here, we are not inclined to hold that Patrolman Roth was required to inform Appellant of each of the factors that contributed to the stop. Further, the credibility of witnesses is a matter primarily for the trier of fact and we give deference to that judgment. See State v.Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trial court found that Patrolman Roth's testimony was credible despite Appellant's contentions regarding the videotape, and we are provided with no reason to revisit that determination.
 {¶ 13} Additionally, Brown offers no rationale for its conclusion that an officer's caretaking duty is terminated immediately upon a vehicle's reentry to the road. While an officer's community caretaking function may lessen once a vehicle reenters the road without incident, we are not inclined to agree that the function ceases immediately solely because the vehicle is operational. The officer must be given some discretion in exercising his community caretaking function.
 {¶ 14} Under the totality of the circumstances presented, Patrolman Roth had a reasonable suspicion supported by specific, articulable facts to justify a stop of Appellant's vehicle. Accordingly, Appellant's sole assignment of error is overruled.
 III. {¶ 15} Appellant's assignment of error is overruled. The judgment of the Elyria Municipal Court is affirmed Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Batchelder, J. Concur.
[1] As the audiotape of the motion to suppress hearing was unavailable, the parties filed an App.R. 9(C) statement of facts regarding Patrolman Roth's testimony.